MAROUANE RAMANOU
665 N. Westfield Street
Apt. A6
Oshkosh, WI 54902

        Plaintiff,

v.

AARON PETKOVSEK
(in his individual capacity)
Oshkosh Police Department
420 Jackson Street
Oshkosh, WI 54901,

AUSTIN WUNNICKE
(in his individual capacity)
Oshkosh Police Department
420 Jackson Street
Oshkosh, WI 54901,

CODY RUKAMP
(in his individual capacity)
Oshkosh Police Department
420 Jackson Street
Oshkosh, WI 54901,

CITY OF OSHKOSH
c/o City Clerk
215 Church Avenue
Oshkosh, WI 54901,

ABC INSURANCE COMPANY,

        Defendants.

Case No.: 1:25-cv-1553

**COMPLAINT**

[Trial by Jury Demanded]

---

**NOW COMES** the above-named plaintiff, Marouane Ramanou, by his attorneys, Gingras, Thomsen, and Wachs LLP, and as and for his claims for relief, alleges and shows to the Court as follows:

1

## INTRODUCTION

1. This action is brought to redress Oshkosh Police Department Officer Aaron Petkovsek's, Officer Austin Wunnicke's and Officer Cody Rukamp's unlawful search and seizure, in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2. The Defendant officers stopped Mr. Ramanou on a frigid February evening. His only alleged offense was operating his vehicle without properly displaying registration tags on his license plate. This alleged infraction should have only warranted a brief detainment to issue a warning or ticket. Instead, the officers detained Mr. Ramanou for over thirty minutes so they could conduct a dog sniff of his vehicle. Even after the dog sniff did not signal the presence of illegal substances, the officers continued their baseless investigation, asking Mr. Ramanou whether his vehicle contained any narcotics or paraphernalia, all while he stood outside in the freezing cold. According to historical weather data, at 1:00 a.m. on February 22, 2025, it was approximately 18 degrees Fahrenheit.[1] This "extended" stop and seizure was contrary to the law. *See, e.g., Taylor v. Schwarzhuber*, 132 F.4th 480, 493 (7th Cir. 2025) ("Even one second of continued detention after an unlawful stop is too long.").

3. Officer Aaron Petkovsek's, Officer Austin Wunnicke's and Officer Cody Rukamp's conduct was purposeful and flagrant. They conducted a suspicion-less race-based fishing expedition in the hope that something would justify the unlawful search and seizure.

## PARTIES

---

[1] https://www.weather.gov/wrh/Climate?wfo=grb;
https://www.wunderground.com/history/daily/us/wi/appleton/KATW/date/2025-2-22.

4. Plaintiff Marouane Ramanou ("Mr. Ramanou") is a black man and an adult resident of the State of Wisconsin, residing at 665 N. Westfield St., Apt. A6, Oshkosh, WI 54902. At all times material hereto, Mr. Ramanou was entitled to all rights and privileges granted by the United States Constitution.

5. Defendant Officer Aaron Petkovsek ("Officer Petkovsek") is a white male and an adult resident of the State of Wisconsin. Officer Petkovsek was a police officer with the Oshkosh Police Department at all times relevant to this action and was acting under the color of law and within the scope of his employment with the Oshkosh Police Department at all times relevant hereto.

6. Defendant Officer Austin Wunnicke ("Officer Wunnicke") is a white male and an adult resident of the State of Wisconsin. Officer Wunnicke was a police officer with the Oshkosh Police Department at all times relevant to this action and was acting under the color of law and within the scope of his employment with the Oshkosh Police Department at all times relevant hereto.

7. Defendant Officer Cody Rukamp ("Officer Rukamp") is a white male and an adult resident of the State of Wisconsin. Officer Rukamp was a police officer with the Oshkosh Police Department at all times relevant to this action and was acting under the color of law and within the scope of his employment with the Oshkosh Police Department at all times relevant hereto.

8. Defendant City of Oshkosh ("Oshkosh"), with offices of its executive located at 215 Church Ave, Oshkosh, WI 54903, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. Oshkosh established, operated, and maintained the Oshkosh Police Department at all times material hereto. Oshkosh is ultimately responsible for the training, supervising, and discipline of Oshkosh Police Department employees

3

and the creation and implementation of its policies and procedures through its Chief of Police and had ultimate control and authority over the Oshkosh Police Department and Officer Petkovsek, Officer Wunnicke, and Officer Rukamp. Pursuant to Wis. Stat. § 895.46, Oshkosh is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that may be awarded against its officials, employees and agents.

9. Defendant ABC Insurance Company is the fictitious name of the insurer for Oshkosh. ABC Insurance Company issued a policy of insurance that provided coverage for the allegations herein for the actions of Oshkosh and its employees.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Plaintiff's claims and the Parties pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTS

12. On February 22, 2025, around 12:50 a.m., Officer Petkovsek activated his lights to perform a traffic stop of Mr. Ramanou near the intersection of W. 7th Avenue and S. Westfield Street in Oshkosh – a residential road. The temperature was about 18 degrees Fahrenheit.

13. Officer Petkovsek walked up to Mr. Ramanou's vehicle and asked him to "pull[] ahead over to the side of the road right there" because he was parked in the "middle of the intersection."

4



14. Mr. Ramanou pulled his vehicle forward to W. 7th Ave and Lilac Street, parked on the side of the road and applied his hazard lights.

15. Officer Petkovsek approached Mr. Ramanou's vehicle and reprimanded him, stating "Sir, I said park on the shoulder. What don't you understand about that?"

16. Officer Petkovsek never asked Mr. Ramanou to park on the shoulder. Mr. Ramanou, understandably confused, asked "what do you mean by shoulder?"

17. Officer Petkovsek became increasingly rude to Mr. Ramanou, and Mr. Ramanou responded "sir, you don't need to be impolite about it."

18. At 12:52:28, Officer Petkovsek demanded, without any legal basis, that Mr. Ramanou step out of the vehicle. Mr. Ramanou complied with the order.

19. Officer Petkovsek asked Mr. Ramanou if he had any weapons on him, to which Mr. Ramanou responded "no." Officer Petkovsek directed him to stand at the rear of his vehicle, and Mr. Ramanou complied.

5

20. At 12:52:40, Officer Petkovsek asked for permission to pat Mr. Ramanou down for weapons. Mr. Ramanou lawfully declined.

21. At 12:52:58, upon request by Officer Petkovsek, Mr. Ramanou provided his license and confirmed that he had insurance on the vehicle.

22. Officer Petkovsek returned to his squad car to run Mr. Ramanou's license, leaving Mr. Ramanou standing outside with a state patroller who had just arrived on the scene.

23. Officer Wunnicke arrived just after 12:56 a.m., at which point there were three squad cars at the scene of a routine traffic stop. Officer Wunnicke communicated with Officer Petkovsek, who was seated in his squad car. Officer Wunnicke muted his body camera for just less than one minute, and his initial conversation with Officer Petkovsek was not captured.

24. At approximately 12:57:17, Officer Wunnicke asked Officer Petkovsek for Mr. Ramanou's name and whether he told Officer Petkovsek where he was coming from. Officer Petkovsek responded that he "didn't even get that far" and that Mr. Ramanou would not consent to a pat down.

25. Without ever speaking with Mr. Ramanou, Officer Wunnicke concluded that the officers had reasonable suspicion, though he did not identify for what allegedly unlawful activity they had obtained reasonable suspicion. He told Officer Petkovsek to ask Mr. Ramanou for permission to search the vehicle, and if he did not consent, they would have a dog sniff the vehicle.

26. At 12:57:55, Officer Petkovsek asked Mr. Ramanou for consent to search his vehicle. Mr. Ramanou lawfully declined.

27. Officer Wunnicke asked Mr. Ramanou where he was coming from. Mr. Ramanou lawfully replied "that doesn't matter, sir. I don't need to answer that."

6

28. Officer Petkovsek asked Mr. Ramanou to produce proof of insurance. Mr. Ramanou temporarily entered the front seat of his vehicle to provide his insurance information.

29. While seated in his vehicle, Mr. Ramanou explained that he did not place the registration tags on his vehicle's license plate because he travels to work in Chicago, where individuals frequently steal license plates, place them on other vehicles and commit crimes. Mr. Ramanou confirmed that his vehicle's registration status was not expired.

30. At 1:00:22, Officer Wunnicke stated that "the state of Wisconsin mandates that you do put your stickers on," acknowledging the basis for the stop.

31. At approximately 1:02:10, Mr. Ramanou complied with Officer Wunnicke's order to step out of the vehicle. Officer Wunnicke explained that they were waiting for a K9 officer to arrive at the scene to conduct a sniff of his vehicle.

32. At 1:03:10, Officer Wunnicke confirmed that Mr. Ramanou was detained and instructed him that he was not free to walk around.

33. At approximately 1:03:48, Officer Wunnicke stated that he was going to give "Cody" a call, referring to Officer Cody Rukamp of the K9 unit.

34. Mr. Ramanou was not wearing gloves, so he placed his hands in his pockets to stay warm. Officer Petkovsek ordered him to take his hands out of his pockets:



35. Mr. Ramanou expressed that he was cold. Officer Petkovsek explained that he would only permit Mr. Ramanou to place his hands in his pockets if he consented to a search of his person for weapons. Mr. Ramanou lawfully declined the search.

36. Officer Rukamp arrived at the scene with a dog to conduct the sniff. At 1:09:30, Officer Rukamp commenced the sniff of Mr. Ramanou's vehicle.



37. At 1:10:27, the dog was no longer sniffing Mr. Ramanou's vehicle, and Officer Rukamp instructed the dog to "go potty" multiple times.

38. Officer Rukamp continued to direct the dog toward Mr. Ramanou's vehicle to conduct the sniff:



9

39. During the sniff, the dog scratched the car, causing damage to Mr. Ramanou's vehicle:




40. At 1:13:03, the sniff concluded, and Officer Rukamp returned the dog to the squad car. The dog sniff did not indicate the presence of any illegal substances.

41. At 1:14:09, Officer Rukamp asked Mr. Ramanou if he owned the vehicle and how long he had owned the vehicle. Mr. Ramanou lawfully responded by inquiring if he was free to go, and Officer Rukamp replied "not yet" because he still needed to finish the traffic investigation.

42. Despite that the dog sniff already failed to produce any evidence of drugs in Mr. Ramanou's vehicle, Officer Rukamp further inquired whether there was any reason the dog would alert him to narcotics; whether Mr. Ramanou had ever possessed narcotics in the vehicle; and whether there was drug paraphernalia or anything else illegal in the vehicle. Mr. Ramanou lawfully declined to answer these questions, replying "just do your job."

43. Mr. Ramanou expressed that he would like to be on his way, and Officer Rukamp responded "I'll have him work on his paperwork, okay? I'll let him work on his paperwork," while

gesturing toward Officer Petkovsek. Officer Petkovsek went to his squad car to begin issuing the citations for allegedly driving with a suspended license and improperly attaching the registration tag. Officer Petkovsek, who did not participate in the dog sniff, prolonged the unlawful seizure further by waiting until after the unlawful dog sniff was completed to draft and issue the citations.

44. At 1:15:31, Officer Rukamp stated that he was just asking Mr. Ramanou questions, and they were not going to get him in trouble at all. Officer Rukamp asked whether Mr. Ramanou used cocaine or methamphetamine. Mr. Ramanou lawfully declined to answer these questions. Officer Rukamp replied that it would make his job easier if Mr. Ramanou told him he did not use drugs.

45. At 1:16:01, Officer Rukamp walked away from Mr. Ramanou and began flashing a flashlight into Mr. Ramanou's vehicle.

46. At 1:16:58, Officer Rukamp talked to Officer Petkovsek and stated, "I don't have anything."

47. At 1:20:59, Officer Petkovsek returned the license to Mr. Ramanou and issued the citations.

48. At 1:21:18, over thirty minutes after the "stop," the officers informed Mr. Ramanou he was free to leave.

49. On May 21, 2025, the Winnebago County Circuit Court dismissed both citations, finding that Mr. Ramanou had a valid driver's license at the time of the unlawful stop and now had valid license plates.

**FIRST CLAIM FOR RELIEF – UNREASONABLE SEARCH AND SEIZURE**

50. Plaintiff realleges and incorporates by reference all other paragraphs in this complaint.

51. At all times relevant to the events set forth, Mr. Ramanou had a clearly established constitutional right under the Fourth Amendment to be secure in his person against unreasonable searches and seizures.

52. Any reasonable law enforcement officer knew or should have known of this clearly established right.

53. While dog sniff inspections are not per se unconstitutional, a seizure justified only by a police-observed traffic violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015).

54. Defendants detained, interrogated, and conducted a dog sniff, absent any reasonable suspicion of unlawful activity.

55. At the time Defendants unlawfully seized Mr. Ramanou to conduct a sniff inspection, they knew they lacked any reasonable suspicion that Mr. Ramanou had committed any unlawful activity other than allegedly operating his vehicle with a suspended license and improperly attaching his registration tag.

56. Any reasonable officer knew or should have known that it is clearly established law that officers violate a person's Fourth Amendment protections from unreasonable searches and seizures when they detain a person to conduct a dog sniff and/or search his vehicle without evidence that the person is engaged in a crime, and that officers deepen the breach when they prolong the unlawful detention to fish for evidence of wrongdoing.

57. Defendant's conduct was purposeful and flagrant.

58. Defendants' unlawful conduct caused Mr. Ramanou to sustain damages, including, among others, property damage, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## SECOND CLAIM FOR RELIEF – FAILURE TO INTERVENE

59. Plaintiff realleges and incorporates by reference all other paragraphs in this complaint.

60. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under the color of state law and within the scope of their employment to deprive Mr. Ramanou of his constitutional rights.

61. Before the unlawful search and seizure, Defendants had sufficient time and opportunity to intervene and prevent the ongoing unlawful search and seizure but instead joined in all the unlawful conduct in reckless disregard of the Plaintiff's constitutional rights.

62. The described conduct on the part of the Defendants as set forth above was a cause of the Plaintiff's injuries, losses, and damages as set forth herein.

## REMEDY – PUNITIVE DAMAGES

63. Plaintiff realleges and incorporates by reference all preceding paragraphs.

64. The conduct described in this complaint of the individual Defendants was unlawful, extreme, malicious, outrageous, and/or intentional.

65. Such conduct was intended to cause Mr. Ramanou unnecessary and severe personal psychological and emotional injuries.

66. Such conduct on the part of the individual Defendants was a cause of the psychological and emotional injuries suffered by Mr. Ramanou.

67. At all times material hereto, the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference toward Mr. Ramanou, or in an intentional disregard of his rights, such as to subject each individual Defendant to punitive damages.

68. The Defendant, Oshkosh, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against an individual employee Defendant in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a. Against Defendants Officer Petkovsek, Officer Wunnicke, and Officer Rukamp in their individual capacities, for compensatory damages, for the violation of Mr. Ramanou's rights, as set forth above, in an amount to be determined at trial;

b. Against Defendants Officer Petkovsek, Officer Wunnicke, and Officer Rukamp for punitive damages for the violation of Mr. Ramanou's rights, as set forth above, in an amount to be determined at trial;

c. Against Defendant City of Oshkosh for its liability pursuant to Wis. Stat. § 895.46 to indemnify the individual Defendants in an amount to be determined at a trial of this matter;

d. For all costs, disbursements and actual attorney's fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Dated at Madison, Wisconsin, this 10th day of October, 2025

GINGRAS, THOMSEN & WACHS, LLP
Attorneys for Plaintiff

s/ Attorney Isaac P. Huettl
Isaac P. Huettl
State Bar No.: 1122828
Mark L. Thomsen
State Bar No.: 1018839

**P.O. ADDRESS**
8150 Excelsior Drive
Madison, WI 53717
Telephone:   (608) 807-0039
Facsimile:   (414) 763-6413
Email:       mthomsen@gtwlawyers.com
             ihuettl@gtwlawyers.com